IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEXANDER WELLER,<br><br>PLAINTIFF,<br><br>v.<br><br>INTERIM PHYSICIANS, LLC,<br><br>APOGEE MEDICAL GROUP, PENNSYLVANIA, P.C.,<br><br>and<br><br>PENN HIGHLANDS HEALTHCARE, DUBOIS REGIONAL MEDICAL CENTER,<br><br>DEFENDANTS. | Civil Action No. _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT AND JURY DEMAND

Plaintiff Alexander Weller, by and through his attorneys, Bell & Bell LLP, hereby files the following Complaint and Jury Demand ("Complaint").

## PRELIMINARY STATEMENT

1. This is an action for an award of damages and other relief on behalf of Plaintiff Alexander Weller, M.D., M.S. (hereinafter "Plaintiff" or "Dr. Weller"), an experienced and qualified applicant for the position of locum tenens hospitalist physician through Interim Physicians, LLC ("Interim Physicians"), a locum tenens staffing firm. Dr. Weller was confirmed by Interim Physicians to provide locum tenens physician hospital coverage for the Apogee Medical Group, Pennsylvania, P.C. ("Apogee") at Penn Highlands Healthcare, DuBois Regional Medical Center ("Penn Highlands Healthcare"), part of Penn Highlands Healthcare System (hereinafter, Apogee, Interim Physicians, and Penn Highlands Hospital will collectively be

referred to as "Defendants"). Dr. Weller has been harmed by Defendants' discrimination and retaliation, due to their failure and/or refusal to hire Dr. Weller as a result of his current or former disability or perceived disability, his refusal to disclose personal and confidential information regarding such disability, and retaliation for his complaints about and opposition to discrimination.

2. This action arises under the American with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"), and the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq.

## JURISDICTIONAL STATEMENT

3. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and federal question jurisdiction pursuant to 28 U.S.C. § 1331.

4. The amount in controversy in this matter exceeds the jurisdictional minimum exclusive of interest and costs.

5. The Parties hereto are citizens and/or residents of different states.

6. Plaintiff Dr. Alexander Weller is a citizen and resident of the State of New York.

7. Defendant Interim Physicians is a Delaware corporation with its headquarters in St. Louis, Missouri.

8. Defendant Apogee is a Pennsylvania professional corporation with its headquarters in Scottsdale, Arizona.

9. Defendant Penn Highlands Healthcare is a Pennsylvania nonprofit corporation with its headquarters in DuBois, Pennsylvania.

10. This Court has jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

11. All conditions precedent to the institution of this suit have been fulfilled. On August 1, 2019, Plaintiff timely filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC"). Dr. Weller dual-filed his PHRC Complaint as a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). On August 8, 2022, the EEOC issued a Notice of Right to Sue to Plaintiff. This action has been filed within 90 days of Plaintiff's receipt of said notice. It has been greater than one year since Dr. Weller filed his Complaint with the PHRC.

## VENUE

12. This action properly lies in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b).

13. This action properly lies in the Eastern District of Pennsylvania because significant activities associated with the claims alleged took place in this jurisdiction and because Plaintiff applied for, and was denied, employment by Defendants in this jurisdiction.

## PARTIES

14. Plaintiff Dr. Weller is an adult male citizen and resident of the State of New York and the United States of America.

15. Dr. Weller is a qualified individual with a disability within the meaning of the ADA.

16. Dr. Weller's disability affects a major bodily function and substantially limits one or more major life activities.

17. Dr. Weller's disability has affected him for a period far in excess of six months.

18. During his hospital and medical staff credentialing process with Defendants, Defendants regarded Dr. Weller as disabled.

19. Defendant Interim Physicians, is a locum tenens physician staffing firm that provides staffing opportunities for physicians in the fields of Primary Care/Family Practice, Internal Medicine, Hospitalists, Emergency Medicine, and General Surgery.

20. Defendant Apogee Physicians is physician-owned and operated hospitalist group operating in Pennsylvania through Apogee Medical Group, Pennsylvania, P.C.

21. Defendant Penn Highlands Healthcare operates the DuBois Regional Medical Center in DuBois, Pennsylvania.

22. At all relevant times, Defendants each are and have been employers employing more than 100 employees.

23. At all relevant times, employees of Defendants acted as agents and servants for Defendants.

24. At all relevant times, employees of Defendants were acting within the scope of their authority and in the course of their employment under the direct control of Defendants.

25. At all times material hereto, Defendants acted by and through their authorized agents, servants, workmen and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

26. At all relevant times hereto, each Defendant was an "employer" and/or "person" under the laws at issue in this matter and is accordingly subject to the provisions of said laws.

**FACTS**

27. Plaintiff Dr. Alexander Weller is a board-certified physician of internal medicine. He is licensed to practice medicine in the Commonwealth of Pennsylvania, without any restrictions. Physicians in Pennsylvania are licensed by the Bureau of Professional and Occupational Affairs within the Department of State.

28. Dr. Weller has and/or has had a disability.

29. On or about March 29, 2019, Dr. Weller spoke with Jennifer Guzman, Regional Recruiting Director for Interim Physicians, regarding certain available positions for which he was amply qualified.

30. One of these positions was through Apogee at Penn Highlands Healthcare, to provide locum tenens physician hospitalist coverage.

31. Specifically, Ms. Guzman informed Dr. Weller that the position of Hospitalist was available at Penn Highlands, for eleven shifts, on April 26, 2019; April 28, 2019; April 29, 2019; and May 14-21, 2019.  The pay would consist of $170 per hour for each day shift, and $180 per hour for each night shift.  In addition, the pay rate for holidays would be $255 per hour for day shifts, and $270 per hour for night shifts.

32. In this position, the Hospital and Medical Group would retain control over all material aspects of Dr. Weller's activities at the hospital; specifically, the hospital would determine his shifts and the nurses and assistants who would work with Dr. Weller; Dr. Weller would be required to be on the hospital's premises during his shifts; the hospital would provide site-specific training;  the patients Dr. Weller would be assigned to see on a daily basis would be assigned by the hospital or medical group; the hospital would provide the credentials that Dr. Weller would have to display while inside the hospital; the hospital would provide Dr. Weller with the instrumentalities and tools required to complete his work, namely access to the electronic medical record to enter orders and document encounters;  and require Dr. Weller to become and remain a member in good standing on the medical staff.

33. Interim Physicians would pay Dr. Weller's medical malpractice insurance premiums. Penn Highlands Healthcare and Dubois Regional Medical Center own, operate, and maintain the facilities and equipment that Dr. Weller would use.

34. Penn Highlands Healthcare and/or Apogee would have the right to bill Medicare, Medicaid and private insurance companies for services rendered by Dr. Weller. Further, provision of healthcare services to hospitalized patients is an essential element of the primary business of Penn Highlands Healthcare. The hospital had the power to demand a replacement physician from the staffing agency and to prevent Dr. Weller from returning to the hospital.

35. Dr. Weller also expected that the position would have led to additional work at the Hospital based upon representations made to him by representatives of Interim Physicians.

36. Dr. Weller was confirmed to work at Penn Highlands Hospital for eleven shifts, to begin on April 25, 2019.

37. The parties agreed to the above terms.

38. In order to begin his position, Dr. Weller was required to apply for hospital credentials and membership to the medical staff at DuBois Regional Medical Center.

39. Dr. Weller received several documents and forms to be filled out and submitted in order to begin his position.

40. Among the forms and documents sent to Dr. Weller, on April 9, 2019, Defendants sent a form entitled "Confidential Peer Review Document" (hereinafter, the "Confidential Document"), which was part of the application for medical staff membership and credentialing.

41. The Confidential Document posed probing and personal questions regarding any potential disability, perceived disability, and/or actual disability of Dr. Weller. For example, among other things, the Confidential Document asked: "Have you ever been denied health, life

or disability insurance?", "Do you have any limitations on your health, life, or disability insurance?", and "Are you currently under any limitations concerning your activities or work load?"

42. In addition to the above questions, the Confidential Document stated that, in signing the document, "I understand that the burden is on me to request any proposed accommodations and to justify its reasonableness."

43. The Confidential Document contained numerous offenses in violation of the Pennsylvania Human Relations Act and Americans with Disabilities Act: it forced an applicant to disclose any and all current and/or former disabilities, or even any condition that may be (wrongfully or not) perceived as a disability; it inevitably resulted in the perception of a disability, should one check the box indicating that the applicant has been denied disability insurance; and it improperly demanded that, to the extent an applicant requested an accommodation, such applicant justify the reasonableness of such accommodation.

44. Dr. Weller has and/or has had a physical or mental impairment that substantially limited one or more major life activities.

45. Dr. Weller was qualified and able to perform all essential functions of the job, with or without reasonable accommodations.

46. Any current or former disability of Dr. Weller, or former denial of health, life or disability insurance, has no impact or relevance to Dr. Weller's qualifications and/or ability to perform his job in an efficient, professional and exemplary manner.

47. Dr. Weller was extremely uncomfortable with revealing any current or former disability or denial of insurance to Defendants, particularly where the Defendants would thereafter perceive him as being disabled, and possibly lead to denial of his application for

medical staff privileges. Denial of Dr. Weller's application for medical staff privileges would be reportable to the National Practitioner Data Bank, thus impairing his ability to obtain licensure and medical staff appointments in the future.

48. After reviewing the Confidential Document, Dr. Weller verbally objected to and complained about the discriminatory nature of the document and expressed his concerns regarding the document.

49. Dr. Weller's concerns were ignored.

50. On April 10, 2019, Dr. Weller notified Matt Goudy, Regional Vice President at Interim Physicians, and Jennifer Guzman, Regional Recruiting Director at Interim Physicians, that he was in the process of obtaining proper counsel on how best to complete the application process.

51. The following day, on April 11, 2019, Dr. Weller sent a follow-up email to Katie Brown, Quality Assurance Specialist at Interim Physicians, Mr. Goudy and Ms. Guzman, detailing the specific issues with the Confidential Document, requesting that the offensive portions of the documents be removed and/or waived.

52. Dr. Weller objected in writing on April 11, 2019 that the Confidential Document was discriminatory and a violation of applicable laws including the Americans with Disabilities Act and the Pennsylvania Human Relations Act.

53. Dr. Weller further noted that he was ready, willing and able to begin work on April 25, 2019, as per the assignment confirmation of April 5, 2019.

54. Thereafter, on April 11, 2019, Dr. Weller was told that the application would not be amended in any way and that his credentialing process would immediately be discontinued, and that the position would be given to a different physician.

55. Another physician was appointed to the position instead of Dr. Weller.

56. By asking questions regarding any condition for which Dr. Weller required accommodation to perform his job, any denial and limitations on insurance, and limitations on disability insurance, the Confidential Document wrongfully and unlawfully attempted to elicit information relating to any current and former disabilities of Dr. Weller.

57. The Confidential Form also wrongfully mandated that, to the extent Dr. Weller sought any accommodation for a disability, Dr. Weller justify the reasonableness of such requested accommodation.

58. Because Dr. Weller refused to sign the form as written, and complained about and objected to discrimination, Defendants retracted his confirmation and refused to allow Dr. Weller to begin his position at DuBois Regional Medical Center.

59. In retaliation for Dr. Weller's questioning of the form, and complaining about and objecting to discrimination, Defendants immediately retracted Dr. Weller's hire on April 11, 2019.

60. Despite Dr. Weller's clear qualifications, confirmation of his assignment and specific shifts to work, and willingness to begin the position, Defendants retracted Dr. Weller's offer and/or failed/refused to retain Dr. Weller on the basis of his current or former disability and/or perceived disability, for his refusal to provide information relating to such disability, and in retaliation for his complaints about and opposition to discrimination.

61. Given his treatment by Defendants, Dr. Weller maintains that Defendants discriminated against him on the basis of his disability and/or perceived disability, and retaliated against him for his refusal to provide inappropriate confidential and personal information relating to any current or former disability, and for his objection to and complaints about discrimination.

62. The circumstances surrounding Defendants' retraction of Dr. Weller's job offer, despite his clear interest in the position, undisputed qualifications and confirmed assignment of the position, are indicia of a discriminatory and retaliatory animus against Dr. Weller.

63. The timing of Defendants' retraction of Dr. Weller's offer, coming mere hours after Dr. Weller's complaints about and objection to discrimination, indicates that Defendants' refusal to hire Dr. Weller was the result of discrimination and retaliation.

64. By retracting his employment offer for his failure to disclose current and former disabilities and complaining about and objecting to discrimination, Defendants discriminated and retaliated against Dr. Weller, in violation of the Pennsylvania Human Relations Act and the Americans with Disabilities Act.

65. In addition, Defendants adopted and utilized application procedures that were discriminatory in nature, by using qualification standards, tests or other criteria that screen out or tend to screen out individuals with current or former disabilities, and individuals whom they perceived to be disabled.

66. Defendants' treatment of Dr. Weller is markedly different from the treatment of employees and applicants who were not disabled and/or perceived as being disabled.

67. Defendants violated the Pennsylvania Human Relations Act and Americans with Disabilities Act because, among other things: (i) the Confidential Document resulted in Defendants' perception of Dr. Weller as disabled; (ii) the Confidential Document forced Dr. Weller to disclose any and all current and/or former disabilities, including any condition that may be (wrongfully or not) perceived as a disability; (iii) the Confidential Document wrongfully demanded that, to the extent Dr. Weller requested an accommodation for any disability, that he justify the reasonableness of such accommodation; (iv) Defendants adopted application

procedures that sought to screen out disabled and/or formerly disabled applicants through unnecessary tests and criteria; (v) Defendants retaliated against Dr. Weller for objecting to and complaining about discrimination; and (vi) Defendants administered its employment, medical staff appointment and application policies and hiring and credentialing decisions in a discriminatory fashion.

68. Dr. Weller has suffered mental anguish and severe emotional distress as a direct and proximate result of the actions and inactions of Defendants.

69. Defendants and their agents acted with the intent of causing or with reckless disregard for the probability that their actions would cause Dr. Weller severe emotional distress.

70. Dr. Weller has suffered financial losses, which include, among other things, lost wages and an obligation for attorneys' fees and costs of bringing suit, as a direct and proximate result of the actions and inactions of Defendants.

## COUNT I
### The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.
### (Plaintiff v. All Defendants)

71. Plaintiff Alexander Weller repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

72. Based on the foregoing, Defendants have engaged in unlawful employment practices in violation of the Americans with Disabilities Act.

73. In discriminating against Dr. Weller on the basis of his disability and/or because Defendants regarded Dr. Weller as disabled, and in retaliating against Dr. Weller for his complaints about discrimination, Defendants violated the ADA.

74. Defendants imposed application or eligibility criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities from fully and equally enjoying and goods, services, facilities, privileges, advantages, or accommodations.

75. Said violations were intentional and willful.

76. Said violations warrant the imposition of punitive damages.

77. As the direct and proximate result of Defendants' violation of the Americans with Disabilities Act, Plaintiff Alexander Weller has sustained loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

## COUNT II
### Pennsylvania Human Relations Act, 43 P.S. § 951, et seq.
### (Plaintiff v. All Defendants)

78. Plaintiff Alexander Weller repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

79. Based on the foregoing, Defendants engaged in unlawful practices in violation of the Pennsylvania Human Relations Act.

80. In discriminating against Dr. Weller on the basis of his disability or because Defendants regarded Dr. Weller as disabled, and in retaliating against Dr. Weller for complaining about the discrimination, Defendants violated the PHRA.

81. As the direct and proximate result of Defendants' violations of the Pennsylvania Human Relations Act, Plaintiff Alexander Weller has sustained a loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred an obligation for attorneys' fees and costs.

**COUNT III**
**Breach of Contract**
**(Plaintiff v. Defendant Interim Physicians)**

82. Plaintiff Alexander Weller repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

83. The parties agreed that Dr. Weller would be employed in the position of Hospitalist at Penn Highlands, for eleven shifts, on April 26, 2019; April 28, 2019; April 29, 2019; and May 14-21, 2019. The parties furthered agreed that Dr. Weller's pay would consist of $170 per hour for each day shift, and $180 per hour for each night shift. In addition, the pay rate for holidays would be $255 per hour for day shifts, and $270 per hour for night shifts.

84. In this position, the parties agreed that the Hospital and Medical Group would retain control over all material aspects of Dr. Weller's activities at the hospital; specifically, the hospital would determine his shifts and the nurses and assistants who would work with Dr. Weller; Dr. Weller would be required to be on the hospital's premises during his shifts; the hospital would provide site-specific training; the patients Dr. Weller would be assigned to see on a daily basis would be assigned by the hospital or medical group; the hospital would provide the credentials that Dr. Weller would have to display while inside the hospital; the hospital would provide Dr. Weller with the instrumentalities and tools required to complete his work, namely access to the electronic medical record to enter orders and document encounters; and require Dr. Weller to become and remain a member in good standing on the medical staff.

85. The parties agreed that Interim Physicians would pay Dr. Weller's medical malpractice insurance premiums and that Penn Highlands Healthcare and Dubois Regional Medical Center would own, operate, and maintain the facilities and equipment that Dr. Weller would use.

86. Defendant Interim Physicians breached its agreement with Dr. Weller by failing and refusing to allow him to begin his employment and work in accordance with the parties' agreement, based upon their discriminatory practices as alleged elsewhere herein.

87. In failing and refusing to allow Dr. Weller to begin his employment and work in accordance with the parties' agreement, based upon their discriminatory practices as alleged elsewhere herein, Defendant Interim Physicians breached the duty of good faith and fair dealing implied in their agreement.

88. All conditions precedent, if any, necessary to bring Dr. Weller's action against Defendant have been satisfied.

89. As a direct, foreseeable, natural, ordinary and proximate result of Defendant Interim Physicians' breaches and other bad faith conduct, Plaintiff has suffered significant financial and other damages including, but not limited to, loss of earnings, loss of employment opportunities, and other damages and harm.

## COUNT IV
### Breach of Oral Contract
### (Plaintiff v. Defendant Interim Physicians)

90. Plaintiff Alexander Weller repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

91. Count IV is brought in the alternative to Count III.

92. In the alternative, Defendant Interim Physicians orally agreed, promised and/or represented to Dr. Weller that Dr. Weller would be employed in the position of Hospitalist at Penn Highlands, for eleven shifts, on April 26, 2019; April 28, 2019; April 29, 2019; and May 14-21, 2019. The parties furthered agreed that Dr. Weller's pay would consist of $170 per hour

for each day shift, and $180 per hour for each night shift. In addition, the pay rate for holidays would be $255 per hour for day shifts, and $270 per hour for night shifts.

93. In this position, the parties orally agreed that the Hospital and Medical Group would retain control over all material aspects of Dr. Weller's activities at the hospital; specifically, the hospital would determine his shifts and the nurses and assistants who would work with Dr. Weller; Dr. Weller would be required to be on the hospital's premises during his shifts; the hospital would provide site-specific training; the patients Dr. Weller would be assigned to see on a daily basis would be assigned by the hospital or medical group; the hospital would provide the credentials that Dr. Weller would have to display while inside the hospital; the hospital would provide Dr. Weller with the instrumentalities and tools required to complete his work, namely access to the electronic medical record to enter orders and document encounters; and require Dr. Weller to become and remain a member in good standing on the medical staff.

94. The parties orally agreed that Interim Physicians would pay Dr. Weller's medical malpractice insurance premiums and that Penn Highlands Healthcare and Dubois Regional Medical Center would own, operate, and maintain the facilities and equipment that Dr. Weller would use.

95. Defendant Interim Physicians breached its oral agreement with Dr. Weller by failing and refusing to allow him to begin his employment and work in accordance with the parties' agreement, based upon their discriminatory practices as alleged elsewhere herein.

96. In failing and refusing to allow Dr. Weller to begin his employment and work in accordance with the parties' agreement, based upon their discriminatory practices as alleged elsewhere herein, Defendant Interim Physicians breached the duty of good faith and fair dealing implied in their agreement.

97. All conditions precedent, if any, necessary to bring Dr. Weller's action against Defendant have been satisfied.

98. As a direct, foreseeable, natural, ordinary and proximate result of Defendant's breaches and other bad faith conduct, Plaintiff has suffered significant financial and other damages including, but not limited to, loss of earnings, loss of employment opportunities, and other damages and harm.

## PRAYER FOR RELIEF

99. Plaintiff Alexander Weller repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

**WHEREFORE**, Plaintiff Alexander Weller respectfully requests that this Court enter judgment in his favor and against Defendants, and Order:

a. Appropriate equitable relief including, without limitation, injunctive relief prohibiting future violations of the ADA and PHRA, and Ordering Defendants to institute an appropriate affirmative action plan with respect to their discriminatory practices;

b. Defendants to compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which he would have been entitled had he not been subjected to unlawful discrimination, harassment and other wrongful conduct alleged herein;

c. Defendants to compensate Plaintiff with the wages and other benefits and emoluments of employment lost because of Defendants' unlawful conduct;

d. Defendants to pay Plaintiff punitive damages;

e.  Defendants to pay Plaintiff compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;

f.  Defendants to pay Plaintiff's costs of bringing this action, including, but not limited to, Plaintiff's attorneys' fees;

g.  Plaintiff be granted any and all other remedies available under the ADA, the PHRA and Pennsylvania common law; and

h.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff Alexander Weller hereby demands trial by jury as to all issues so triable.

BELL & BELL LLP

By: */s/ Christopher A. Macey, Jr.*
Christopher A. Macey, Jr., Esquire
One Penn Center
1617 JFK Blvd. – Suite 1254
Philadelphia, PA 19103
(215) 569-2285

*Attorneys for Plaintiff Alexander Weller*

Dated: October 19, 2022