# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALEXANDER WELLER | : |
| | : |
| Plaintiff, | : Civil Action No. 2:22-cv-04205 |
| | : |
| v. | : |
| | : |
| INTERIM PHYSICIANS, LLC; | : |
| APOGEE MEDICAL PENNSYLVANIA | : |
| PC; and PENN HIGHLANDS | : |
| HEALTHCARE, DUBOIS REGIONAL | : |
| MEDICAL CENTER | : |
| | : |
| Defendants. | : |

**[PROPOSED] ORDER GRANTING DEFENDANT INTERIM PHYSICIANS' MOTION
TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE,
TO COMPEL ARBITRATION**

AND NOW, on this _____ day of _____, 2023, after

consideration of Defendant Interim Physicians' Motion to Dismiss Plaintiff's Complaint or, in the

alternative, to stay and compel arbitration, and any opposition thereto, and for good cause shown,

it is ORDERED that:

1.   Defendant's Motion is GRANTED.

2.   Plaintiff's Complaint is hereby dismissed with prejudice and the parties shall

submit to arbitration in accordance with their agreement.

_____

Hon.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALEXANDER WELLER | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 2:22-cv-04205 |
| | : | |
| v. | : | |
| | : | |
| INTERIM PHYSICIANS, LLC; | : | |
| APOGEE MEDICAL PENNSYLVANIA | : | |
| PC; and PENN HIGHLANDS | : | |
| HEALTHCARE, DUBOIS REGIONAL | : | |
| MEDICAL CENTER | : | |
| | : | |
| Defendants. | : | |

## DEFENDANT INTERIM PHYSICIANS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION

Defendant Interim Physicians, LLC ("Interim") files the within motion to dismiss Plaintiff Alexander Weller's ("Plaintiff" or "Weller") Complaint under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to stay and compel arbitration, and in support of the same will rely upon the accompanying brief, which is incorporated by reference.

WHEREFORE, Interim respectfully requests the Court enter an order dismissing Plaintiff's Complaint or compelling Plaintiff to arbitrate his claims as to Interim, and granting such other relief as the Court deems just and proper.

Respectfully submitted,

GORDON REES SCULLY
MANSUKHANI, LLP

/s/ Alexander Nemiroff
Alexander Nemiroff (PA ID. #92250)
Three Logan Square
1717 Arch Street, Suite 610
Philadelphia, PA 19103
(267) 602-2040 (phone)
(215) 253-5017 (fax)

Attorneys for Defendant Interim
Physicians, LLC

Dated:  July 20, 2023

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALEXANDER WELLER | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 2:22-cv-04205 |
| | : | |
| v. | : | |
| | : | |
| INTERIM PHYSICIANS, LLC; | : | |
| APOGEE MEDICAL PENNSYLVANIA, | : | |
| PC; and PENN HIGHLANDS | : | |
| HEALTHCARE, DUBOIS REGIONAL | : | |
| MEDICAL CENTER | : | |
| | : | |
| Defendants. | : | |

## BRIEF IN SUPPORT OF DEFENDANT INTERIM PHYSICIANS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   PROCEDURAL HISTORY/STATEMENT OF FACTS ................................. 2

III.  ARGUMENT ...................................................................................... 4

    A.    Standard of Review - Fed. R. Civ. P. Rule 12(b)(6) Generally ............................. 4

    B.    Standard of Review – Motion to Compel Arbitration ........................................... 5

    C.    Applicable Law ..................................................................................................... 6

    D.    Plaintiff Cannot Satisfy His Burden of Demonstrating That he is an
        "Employee" Entitled to the Protections of either the ADA or the PHRA,
        and Counts I and II of the Complaint Must Be Dismissed as to Interim
        Physicians ............................................................................................................. 7

            1.    The Skill Required, Source of Instrumentalities and Location of the
                  Work ..................................................................................................... 9

            2.    Interim Did Not Control Plaintiff's Work ................................................. 10

            3.    Interim Did Not Provide Benefits or Withhold Taxes .............................. 11

    E.    Because the April 4, 2019 Provider Agreement Contains a Valid and
        Enforceable Arbitration Provision, Plaintiff Must Therefore be Compelled
        to Arbitrate his Breach of Contract Claim (Count III) if it is not Dismissed ........ 11

    F.    Plaintiff's Claim for Breach of an Oral Contract is Precluded by the
        Express Language of the Provider Agreement ..................................................... 17

IV.   CONCLUSION ................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Anthony Int'l, L.P.*,
  341 F.3d 256 (3d Cir. 2003) ................................................................................. 5, 15

*Asberry-Jones v. Wells Fargo Bank, National Association*, 2019 WL 2077731 (E.D. Pa.
  May 10, 2019) ............................................................................................................ 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................... 4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................... 4

*Birchem v. Knights of Columbus*, 116 F.3d 310 (8th Cir. 1997) ............................................. 7, 8

*Blair v. Scott Specialty Gases*, 283 F.3d 595 (3d Cir. 2002) ....................................................... 16

*Brown v. J. Kaz, Inc.*, 581 F.3d 175 (3d Cir. 2009) ........................................................................ 8

*Century Indem. Co. v. Certain Underwriters at Lloyd's London*, 584 F.3d 513 (3d Cir.
  2009) ......................................................................................................................... 11

*Clemens v. ExecuPharm, Inc.*, 2023 WL 4139021 (E.D. Pa. June 22, 2023) ............................... 6

*Cohn v. McGurk*,
  330 Pa. Super. 333 (Pa. Super. Ct. 1984) ................................................................. 17

*CoreStates Bank, N.A. v. Cutillo*,
  723 A.2d 1053 (Pa. Super. Ct. 1999) ......................................................................... 17

*Cost Bros, Inc. v. Travelers Indem. Co.*,
  760 F.2d 58 (3d Cir. 1985) ........................................................................................... 5

*Cronin v. Citifinancial Services, Inc.*, No. 08-1523, 2008 WL 2944869 (E.D. Pa. July 25,
  2008) ......................................................................................................................... 16

*Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429 (Mo. App. W.D. 2010) .................. 12, 13

*Funding Sys. Leasing Corp. v. King Louie Int'l, Inc.*, 597 S.W.2d 624 (Mo. App. W.D.
  1979) ..................................................................................................................... 14, 16

*Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79 (2000) ..................................................... 16

*Guidotti v. Legal Helpers Debt Resolution, LLC*,
716 F.3d 764 (3d Cir. 2013) ............................................................................ 6

*Hart v. Arnold*,
884 A.2d 316 (Pa. Super. Ct. 2005) ............................................................... 18

*Hodges v. SCE Envtl. Group, Inc.*,
No. 3:11cv1410, 2012 U.S. Dist. LEXIS 72490 (M.D. Pa. May 24, 2012) ............................. 5

*Iron Worker's Sav. & Loan Ass'n v. IWS, Inc.*,
424 Pa. Super. 255 (Pa. Super. Ct. 1993) ..................................................... 17

*Jiffy Lube Int'l. Inc. v. Jiffy Lube of Pa., Inc.*, 848 F. Supp. 569 (E.D. Pa. 1994) ......................... 7

*Kansas City Urology, P.A. v. United Healthcare Servs.*, 261 S.W.3d 7 (Mo. App. W.D. 2008) ...................................................................................... 11

*Kirleis v. Dickie, McCamey & Chilcote, P.C.*,
560 F.3d 156 (3d Cir. 2009) ............................................................................ 5

*Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52 (3d Cir. 1994) ................................................ 6

*Kunzie v. Jack–In–The–Box, Inc.*, 330 S.W.3d 476 (Mo. App. E.D. 2010) ................................ 12

*Lerohl v. Friends of Minnesota Sinfonia*, 322. F.3d 486 (8th Cir. 2003) ...................................... 8

*Menkowitz v. Pottstown Mem'l Med. Ctr.*,
154 F.3d 113 (3d Cir. 1998) ............................................................................ 7

*Merchants Distributors, LLC v. Harold Friedman, Inc.*, 2018 WL 1660549 (W.D. Pa. Apr. 5, 2018) ...................................................................................... 6

*Morina v. Neiman Marcus Grp., Inc.*,
Civil Action No. 14-1394, 2014 U.S. Dist. LEXIS 141533 (E.D. Pa. Oct. 1, 2014) ............. 5, 6

*Mwangi v. Federal National Mortgage Association*, 162 F.Supp.3d 1331 (N.D. Ga. 2016) ......... 9

*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992) ............................................................ 8

*Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269 (3d Cir. 2004) ...................................... 14

*Pickney v. Modis, Inc.*,
2022 WL 17652698 (E.D. Pa. Dec. 13, 2022) .................................................. 7

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110 (3d Cir. 1993) ................ 15

*Rahemtulla v. Hassam*,
539 F.Supp.2d 755 (M.D. Pa. 2008) .............................................................. 17

iii

*Redinger v. Oechsle*, 2023 WL 2634922 (W.D. Pa. March 24, 2023) ........................................... 6

*Robinson v. EOR-ARK, LLC*, 841 F.3d 781 (8th Cir. 2016) .......................................................... 11

*Ruhl v. Lee's Summit Honda*, 322 S.W.3d 136 (Mo. 2010) .......................................................... 14

*Shank v. Fiserv, Inc.*,
  Civil Action No. 15-cv-5319, 2016 U.S. Dist. LEXIS 4633 (E.D. Pa. Jan. 14, 2016).......... 5, 6

*Somerset Consulting, LLC v. United Capital Lenders, LLC*,
  832 F.Supp.2d 474 (E.D. Pa. 2011) .............................................................................................. 6

*Southland Corp. v. Keating*,
  465 U.S. 1 (1984) ........................................................................................................................... 5

*State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798 (Mo. 2015) ........................................................... 12

*Sun v. Jackson & Coker Locum Tenens, LLC*, No. 3:10-379-JFA, 2010 WL 1962674 (D.
  S.C. May 14, 2010) ...................................................................................................................... 15

*Swain v. Auto Servs.*, Inc., 128 S.W.3d 103 (Mo. App. E.D. 2003) ........................................... 14

*Tani v. FPL/Next Era Energy*, 2013 WL 3957710 (D. Del. July 29, 2013) ................................... 7

*U-Haul Company of Missouri v. Davis*, 2018 WL 6331707 (W.D. Mo. December 4,
  2018) ............................................................................................................................................ 12

*Vasinda v. State Farm Mutual Automotive Insurance Co.*,
  2022 WL 17669120 (M.D. Pa. Dec. 14, 2022).............................................................................. 9

*Ware v. Rodale Press, Inc.*,
  322 F.3d 218 (3d Cir. 2003) ........................................................................................................ 17

*Whitney v. Alltel Communications, Inc.*, 173 S.W.3d 300 (Mo. App. W.D. 2005) ...................... 15

*Whitworth v. McBride & Son Homes, Inc.*, 344 S.W.3d 730 (Mo. App. W.D. 2011) .................. 12

*Yocca v. Pittsburgh Steelers Sports, Inc.*,
  578 Pa. 479 (2004) .................................................................................................................. 17, 18

**Statutes**

42 U.S.C. § 12111(4) ...................................................................................................................... 8

43 P.S. § 955(a) ............................................................................................................................... 8

9 U.S.C. § 2 ...................................................................................................................................... 5

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 4, 5, 6

## I.   __INTRODUCTION__

Defendant Interim Physicians, LLC ("Interim") is a locum tenens staffing organization that matches physicians who choose to work on a temporary basis to healthcare facilities throughout the country.  Plaintiff Alexander Weller ("Plaintiff" or "Weller") engaged Interim to assist him in finding potential hospitalist opportunities.  Interim referred Plaintiff to a hospitalist position with one of its clients, Defendant Apogee Medical Pennsylvania, PC ("Apogee") at Defendant Penn Highlands Healthcare, Dubois Medical Center ("Penn Highlands").  During the credentialing process with Penn Highlands, Plaintiff took issue with some of the information requested in the Penn Highlands' application.  Penn Highlands ultimately advised on April 11, 2019 that: (1) it would not amend its application or the information requested; and (2) it was discontinuing the credentialing process of Plaintiff in light of the fact that they were running out of time to obtain coverage for the original start date of employment.

Plaintiff alleges that the retraction of his offer from Penn Highlands was the result of unlawful discrimination and retaliation on the part of Defendants, including Interim.  In particular, Plaintiff alleges that Interim engaged in unlawful employment practices in violation of both the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA") (Counts I and II respectively).  Plaintiff also claims that Interim breached both the Provider Agreement he entered into with Interim (Count III) and an alleged oral contract (Count IV) regarding his employment with Apogee and Penn Highlands.

As will be addressed further, Plaintiff's claims against Interim in Counts I and II of his Complaint (alleging violations of both the ADA and PHRA, respectively) fail as a matter of law because Plaintiff was an independent contractor and not an employee of Interim.  The Provider Agreement—which Plaintiff failed to attach to his Complaint—makes it abundantly clear that

Plaintiff was at all times an independent contractor with Interim, and he has therefore failed to state a claim upon which relief can be granted under either the ADA or PHRA. The Provider Agreement also demonstrates that Plaintiff has failed to state a claim regarding Count IV of his Complaint (breach of oral contract), as the agreement provides in no uncertain terms that the written agreement constitutes the entire agreement of the parties with respect to the subject matter contained therein. Lastly, Count III of Plaintiff's Complaint—alleging breach of contract—must be dismissed or stayed, and Plaintiff must be compelled to arbitrate. The Provider Agreement contains a clear and unequivocal binding arbitration provision related to all claims arising out of or relating to the arbitration agreement, which Plaintiff executed on April 4, 2019. The Provider Agreement is governed by Missouri law.

For all of these reasons, Counts I-IV of Plaintiff's Complaint must be dismissed with prejudice as to Interim, and Plaintiff must be compelled to arbitrate Count III of his Complaint, or any other remaining claims, in accordance with Interim's Provider Agreement.

## II.   PROCEDURAL HISTORY/STATEMENT OF FACTS[1]

In March 2019, Plaintiff Alexander Weller ("Plaintiff" or "Weller") engaged Defendant Interim Physicians, LLC ("Interim")—a locum tenens staffing company that matches physicians with healthcare facilities throughout the country—about potential hospitalist opportunities. *See* Complaint ("Compl."), Doc. No. 1, at ¶¶ 19, 27. Interim ultimately referred Plaintiff to a hospitalist position with one of Interim's clients, Defendant Apogee Medical Pennsylvania, PC ("Apogee") at Penn Highlands Healthcare, Dubois Medical Center ("Penn Highlands"). Compl.

---

[1] Facts taken directly from Plaintiff's Complaint shall be considered true for the purposes of this motion only. Interim reserves the right to contest the truth of each and every allegation (factual or otherwise) contained in the Complaint should this motion be denied.

at ¶¶ 30, 31.

Plaintiff executed a Provider Agreement ("Agreement") with Interim on April 4, 2019, setting forth the terms of the arrangement between all of the parties. *See* **Exhibit ("Ex.") A** attached hereto.[2]  Pursuant to the Agreement, Interim was considered the "Broker," while Plaintiff was considered the "Provider." **Ex. A**.  Any facility to which Plaintiff was referred was considered the "Client." *Id.*

Paragraph 8 of the Agreement clearly provides that Plaintiff was not an employee of Interim, and was instead an independent contractor:

> Provider and Broker agree that Provider, Client and Interim are independent entities.  Without limiting the generality of the foregoing, Provider specifically acknowledges and agrees that Provider is not an employee of Interim.
> .

The Agreement further provided at Paragraph 7(e) that it constituted the entire agreement of the parties with respect to the subject matter therein and it may not be amended, altered or revised, except by instrument in writing, signed by both parties. *Id.*  Lastly, the Agreement contained a binding arbitration provision at Paragraph 7(d), which states as follows:

> Any dispute or disagreement arising out of or relating to this Agreement shall be resolved by binding arbitration conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

**Ex. A**.[3]  Plaintiff agreed to all of the terms and conditions set forth in the Agreement.  Compl. at ¶ 37.  As a result, Plaintiff is bound by the arbitration provision contained in the Agreement.

During the credentialing process with Penn Highlands, Plaintiff took issue with some of the information requested in the Penn Highlands' application—specifically in a document entitled

---

[2]  Despite alleging breach of contract claims, Plaintiff failed to attach a copy of the Provider Agreement to his Complaint.  Interim has attached the same hereto for the Court's reference.
[3]  Just above the signature line, the Agreement reiterated the same, stating: "THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION THAT MAY BE ENFORCED BY THE PARTIES." *Id.*

"Confidential Peer Review Document."  Compl. at ¶¶ 40-43, 47.  Penn Highlands ultimately advised on April 11, 2019 that: (1) it would not amend its application or the information requested; and (2) it was discontinuing the credentialing process of Plaintiff in light of the fact that they were running out of time to get coverage for the original start date of employment.  Compl. at ¶ 54.

Plaintiff dual filed a complaint with the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission on or about August 1, 2019 alleging disability discrimination and retaliation.  Approximately three years later, Plaintiff received a Notice of a Right to Sue letter from the EEOC declining to pursue Plaintiff's claims any further at that time, after which Plaintiff filed a Complaint with this Court on October 20, 2022.  In lieu of answering Plaintiff's Complaint, Interim filed a Motion to Dismiss or, in the Alternative, to Compel Arbitration.  The parties participated in a Pre-Trial Conference on July 6, 2023, at which time the Court issued an order dismissing Interim's motion without prejudice, but nevertheless advised that Interim would be permitted to re-file its motion no later than July 20, 2023.

## III.  **ARGUMENT**

### A.  **Standard of Review - Fed. R. Civ. P. Rule 12(b)(6) Generally**

Federal Rule of Civil Procedure 12(b)(6) authorizes the filing of a motion to dismiss where the complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a complaint must set forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff must provide more than a formulaic recitation of a claim's elements that amount to mere labels and conclusions.  *Id.*

4

**B.      Standard of Review – Motion to Compel Arbitration**

Section 2 of the Federal Arbitration Act ("FAA") provides that arbitration agreements "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." *Morina v. Neiman Marcus Grp., Inc.*, Civil Action No. 14-1394, 2014 U.S. Dist. LEXIS 141533, at **13-14 (E.D. Pa. Oct. 1, 2014) (quoting 9 U.S.C. § 2).  "The purpose of the Act was to abolish the common law rule that arbitration agreements were not judicially enforceable." *Id.* at *14 (quoting *Cost Bros, Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985)).  The FAA, therefore, "preempts state law that might 'undercut the enforceability of arbitration agreements." *Id.* (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 16, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984)).

It is "well established that the Federal Arbitration Act (FAA), reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Hodges v. SCE Envtl. Group, Inc.*, No. 3:11cv1410, 2012 U.S. Dist. LEXIS 72490, *3 (M.D. Pa. May 24, 2012); *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)).  "If a valid agreement exists and the controversy falls within its terms, then, as noted above, the clause "shall be valid, irrevocable, and enforceable," and the court must mandate arbitration." *Morina*, 2014 U.S. Dist. LEXIS 141533, at *14 (E.D. Pa. Oct. 1, 2014) (quoting 9 U.S.C. § 2).

As a threshold matter, the Court must determine whether to consider Interim's Motion to Compel Arbitration using a motion to dismiss standard pursuant to Rule 12(b)(6) or whether to order the parties to conduct discovery on the question of arbitrability before proceeding to review a renewed motion to compel arbitration using a summary judgment standard.  *Shank v. Fiserv, Inc.*, Civil Action No. 15-cv-5319, 2016 U.S. Dist. LEXIS 4633 at *2-3 (E.D. Pa. Jan. 14, 2016)

(quoting *Morina v. Neiman Marcus Grp., Inc.*, Civil Action No. 14-1394, 2014 U.S. Dist. LEXIS 141533, 2014 WL 4933022, at *6 (Oct. 1, 2014) (citing *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013)). The Third Circuit has clarified that "when it is apparent, based on the 'face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'" *Shank*, 2016 U.S. Dist. LEXIS 4633 at *3 (citing *Guidotti*, 716 F.3d at 776 (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F.Supp.2d 474, 482 (E.D. Pa. 2011)).

The Complaint and the documents relied upon therein—including the Provider Agreement that Plaintiff failed to attach to his Complaint—in this instance are clear. Plaintiff executed the Provider Agreement on April 4, 2019. Accordingly, Interim's Motion to Dismiss and to Compel Arbitration should be decided under a Rule 12(b)(6) standard.

### C.    Applicable Law

In Pennsylvania, courts will "generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." *Clemens v. ExecuPharm, Inc.*, 2023 WL 4139021 at *3 (E.D. Pa. June 22, 2023) (citing *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994)). The Provider Agreement states that it "shall be deemed to be a contract made and entered into under the laws of the State of Missouri and the laws of such State shall govern the interpretation and enforcement hereof." *See* **Ex. A** at ¶7.e. Plaintiff's contractual claims and those defenses compelling arbitration should therefore be governed by Missouri law. "Courts analyze choice of law provisions 'to determine, based upon their narrowness or breadth, whether the parties intended for the agreement to encompass all elements of their association.'" *Redinger v. Oechsle*, 2023 WL 2634922 (W.D. Pa. March 24, 2023) (quoting *Merchants Distributors, LLC v. Harold Friedman, Inc.*, 2018 WL 1660549, at *3 (W.D. Pa. Apr. 5, 2018)

(additional citations omitted)).  "A contract's choice of law provision 'do[es] not govern tort claims between contracting parties unless their fair import of the provision embraces all aspects of the legal relationship." *Id*.  Where the choice of law provision is expressly limited to "this agreement," such language "demonstrate[s] its restricted scope and its applicability" to breach of contract claims alone.  *Id*. (quoting *Jiffy Lube Int'l. Inc. v. Jiffy Lube of Pa., Inc.*, 848 F. Supp. 569, 576 (E.D. Pa. 1994)).  The claims of the breach of the Provider Agreement and arbitration provisions contained therein should be construed in accordance with Missouri law.

> **D.  Plaintiff Cannot Satisfy His Burden of Demonstrating That he is an "Employee" Entitled to the Protections of either the ADA or the PHRA, and Counts I and II of the Complaint Must Be Dismissed as to Interim Physicians**

Regardless of whether this Court applies Missouri or Pennsylvania law,[4] Plaintiff is unable to satisfy his *prima facie* burden of demonstrating that he is an employee entitled to the protections of the ADA and the PHRA for one glaring reason: Plaintiff was at all times an independent contractor. It is well recognized that "[l]ike Title VII, the ADA protects 'employees' but not independent contractors."  *Birchem v. Knights of Columbus*, 116 F.3d 310, 312 (8th Cir. 1997); *see also Tani v. FPL/Next Era Energy*, 2013 WL 3957710 at *5 (D. Del. July 29, 2013) ("Title VII and the ADA do not cover independent contractors."); *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 122 (3d Cir. 1998); *Pickney v. Modis, Inc*., 2022 WL 17652698 at *2 (E.D. Pa. Dec. 13, 2022) ("Courts in the Third Circuit have held that the ADA does not cover independent

---

[4] As noted earlier herein, while Plaintiff filed in the United States District Court for the Eastern District of Pennsylvania, the Provider Agreement governing Plaintiff's employment contains a choice-of-law provision stating that the Agreement "shall be deemed to be a contract made and entered into under the laws of the ***State of Missouri*** and the laws of such State shall govern the interpretation and enforcement [t]hereof." **Ex. A** (emphasis added).  In light of the foregoing, as well as the Court's instructions during the parties' July 6, 2023 Pretrial Conference, Plaintiff's claims will be analyzed under both Missouri and Pennsylvania law.

contactors.").[5]

The ADA defines an "employee" as "an individual employed by an employer." 42 U.S.C. § 12111(4). Both the Eight Circuit and the Third Circuit have recognized that this completely circular definition does not offer much in the way of clarity in defining what constitutes an employee, and so "courts apply the general common law of agency to distinguish between protected employees and unprotected independent contractors." *Birchem*, 116 F.3d at 312 (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 & n. 3 (1992); *see also Brown v. J. Kaz, Inc.*, 581 F.3d 175, 180 (3d Cir. 2009) ("The question of whether an individual is an employee turns on the hiring party's right to control the manner and means by which the product is accomplished."). In employment cases, courts will generally examine the Restatement (Second) of Agency factors identified by the Supreme Court in *Nationwide Mutual Insurance Company v. Darden*, 503 U.S. 318, 323 (1992) for purposes of determining "employee" status, including:

> [T]he skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party . . . . No one of these factors is determinative.

*Lerohl v. Friends of Minnesota Sinfonia*, 322. F.3d 486, 489 (8th Cir. 2003); *see also Vasinda v.*

---

[5] While the PHRA has some limited protections for independent contractors, those are not applicable to Interim in this case. The PHRA makes it unlawful for any entity "because of the ... disability ... of any individual or independent contractor, to refuse to hire or employ or contract with, ... or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required." 43 P.S. § 955(a). There are no allegations that Interim violated this provision of the PHRA. Interim clearly entered into the Provider Agreement with Plaintiff and referred Plaintiff appropriately.

*State Farm Mutual Automotive Insurance Co.*, 2022 WL 17669120 at **2-3 (M.D. Pa. Dec. 14, 2022).

In doing so here, it is clear that Plaintiff was never truly an "employee" of Defendant Interim Physicians, thereby preventing him from satisfying his burden under Count I and Count II of the Complaint.

### 1.   The Skill Required, Source of Instrumentalities and Location of the Work

As a preliminary matter, Plaintiff correctly acknowledged in his Complaint that Interim is "a locum tenens physician staffing firm that provides staffing opportunities for physicians in the fields of Primary Care/Family Practice, Internal Medicine, Hospitalists, Emergency Medicine, and General Surgery."  Compl. at ¶ 19.  Perhaps more telling, the Agreement between Interim and Plaintiff conclusively notes that Plaintiff was at all times an independent contractor.  Indeed, Paragraph 8 of the Agreement provides in no uncertain terms the following:

> Provider and Broker agree that Provider, Client and Interim are independent entities.  Without limiting the generality of the foregoing, ***Provider specifically acknowledges and agrees that Provider is not an employee of Interim***.

**Ex. A** (emphasis added).

While admittedly instructive, federal courts have held that where a contract of employment clearly denominates one party as an independent contractor, "that relationship is presumed to be true unless the evidence shows that the employer assumed such control [over the time, place or manner of the work performed]."  *See, e.g.*, *Mwangi v. Federal National Mortgage Association*, 162 F.Supp.3d 1331, 1338 (N.D. Ga. 2016) (internal citations omitted).  What is more, the Agreement also specifically informed Plaintiff that he was to perform medical services "at the assignment address" in the introductory paragraph of the same.  Further, Plaintiff was to perform those services in accordance with "Client policies, procedures, by-laws and standards," and not

those of Interim.  **Ex. A** at ¶ 4a.  Lastly, Plaintiff was to maintain appropriate patient records, which

the Agreement noted "shall remain the property of the Client" (and not Interim).  *See id.*  For the

foregoing reasons, these particular factors militate towards Plaintiff being an independent

contractor for Interim.

### 2.    Interim Did Not Control Plaintiff's Work

Plaintiff also admitted in his Complaint that he understood that Defendants Apogee and

Penn Highlands would be controlling all aspects of his employment:

> In this position, the Hospital [Penn Highlands] and Medical Group [Apogee] would
> retain control over all material aspects of Dr. Weller's activities at the hospital;
> specifically, the hospital would determine his shifts and the nurses and assistants
> who would work with Dr. Weller; Dr. Weller would be required to be on the
> hospital's premises during his shifts; the hospital would provide site-specific
> training; the patients Dr. Weller would be assigned to see on a daily basis would be
> assigned by the hospital, or medical group; the hospital would provide the
> credentials that Dr. Weller would have to display while inside the hospital; the
> hospital would provide Dr. Weller with the instrumentalities and tools required to
> complete his work, namely access to the electronic medical record to enter orders
> and document encounters; and require Dr. Weller to become and remain a member
> in good standing on the medical staff.

Compl. at ¶ 32.  The Provider Agreement between Interim and Plaintiff further confirms the work

was to be performed for Interim's Clients and that Plaintiff would indemnify and hold Interim

harmless for claims not covered by malpractice for such medical services.  *See* **Ex. A** at ¶ 4.

The decision to discontinue the credentialing process and "retract" Plaintiff's alleged

employment opportunity was quite simply not Interim's decision to make.  Interim merely served

as the liaison between Plaintiff and its Clients, Penn Highlands and Apogee.  At no point during

the process did Interim exercise any semblance or degree of control over Penn Highlands'

credentialing requirements or Penn Highlands' subsequent decision to forego hiring Plaintiff after

he refused to comply with the same, and no additional discovery is needed to glean that Defendants

Apogee and Penn Highlands alone "controlled" all material aspects of Plaintiff's work and not

Interim.

### 3.      Interim Did Not Provide Benefits or Withhold Taxes

Plaintiff warranted and agreed that Plaintiff was not eligible for benefits from Interim and that Plaintiff was responsible for all income, social security, Medicare, self-employment, and other taxes, federal, state and local paid pursuant to the Provider Agreement.  *See* **Ex. A** at ¶8.  For all of the above reasons, Plaintiff has failed to establish that he was anything more than an independent contractor.  Given that he cannot satisfy his *prima facie* burden of demonstrating that he was an "employee," he has thus failed state a claim upon which relief can be granted as to Counts I and II of his Complaint, and said claims must be dismissed as to Interim.

### E.      Because the April 4, 2019 Provider Agreement Contains a Valid and Enforceable Arbitration Provision, Plaintiff Must Therefore be Compelled to Arbitrate his Breach of Contract Claim (Count III) if it is not Dismissed

Whether applying Missouri or Pennsylvania law, the arbitration provision contained at Paragraph 7(d) in the Provider Agreement between Interim and Plaintiff is both valid and enforceable.  In making the foregoing determination, a Court must first determine (1) whether there is a valid arbitration agreement, after which it must decide (2) whether the particular dispute falls within the terms of that agreement.  *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 783 (8th Cir. 2016); *see also Century Indem. Co. v. Certain Underwriters at Lloyd's London*, 584 F.3d 513, 527 (3d Cir. 2009) ("to decide whether a party may be compelled to arbitrate a dispute with another party, we must determine (1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement) (internal citation omitted).  Lastly, a Court must determine whether the arbitration agreement is subject to revocation under applicable contract principles. *See Kansas City Urology, P.A. v. United Healthcare Servs.*, 261 S.W.3d 7, 11, 14 (Mo. App. W.D. 2008).  Of course, the

11

party seeking to compel arbitration "has the burden of proving the existence of a valid and enforceable arbitration agreement." *Whitworth v. McBride & Son Homes, Inc.*, 344 S.W.3d 730, 737 (Mo. App. W.D. 2011).

The elements required to form a valid contract in Missouri are 'offer, acceptance, and bargained for consideration.'" *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 436 (Mo. App. W.D. 2010). Courts will also often turn to the FAA to determine validity, which provides that an arbitration agreement is valid "when it is (1) in writing, (2) part of a contract or transaction involving interstate commerce, and (3) valid under general principles of contract law." *U-Haul Company of Missouri v. Davis*, 2018 WL 6331707 (W.D. Mo. December 4, 2018) (citing 9 U.S.C. § 2) ("A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."). The latter provision is sometimes referred to as the FAA's "savings clause." *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 806 (Mo. 2015).

Here, there can be no doubt that there was an offer from Interim that was accepted by Plaintiff. Offer and acceptance requires a mutual agreement. *Frye*, 321 S.W.3d at 436. "A mutual agreement is reached when 'the minds of the contracting parties meet upon and assent to the same thing in the same sense at the same time.'" *Kunzie v. Jack–In–The–Box, Inc.*, 330 S.W.3d 476, 483 (Mo. App. E.D. 2010). Plaintiff and Interim entered into a *written* Provider Agreement on April 4, 2019, and Plaintiff inarguably agreed to the terms and conditions therein. *See* Compl. at ¶ 37; *see also* Ex. A attached hereto. Paragraph 7(d) of the agreement likewise contains a written binding arbitration provision, which states as follows:

> Any dispute or disagreement arising out of or relating to this Agreement ***shall be resolved by binding arbitration conducted in accordance with the Commercial***

***Arbitration Rules of the American Arbitration Association.***

**Ex. A** (emphasis added).[6]   Moreover, immediately above Plaintiff's signature on the Provider

Agreement is a clear and unmistakable reference that serves as adequate notice to Plaintiff of the

parties' agreement to arbitrate:  "THIS CONTRACT CONTAINS A BINDING ARBITRATION

PROVISION THAT MAY BE ENFORCED BY THE PARTIES." *Id.*   The arbitration provision

was therefore readily intelligible in the Provider Agreement, and was ultimately accepted by

Plaintiff.

　　Lastly, valid consideration exists in the agreement.   The clause at issue here is inarguably

bilateral in nature in that it is enforceable by either party, and the Agreement as a whole cannot be

"amended, altered or revised, except by instrument in writing, signed by both parties."  **Ex. A**; *see*

*Frye*, 321 S.W.3d at 438 (holding that "[g]enerally speaking . . . if a contract contains mutual

promises . . . the contract is a bilateral contract supported by sufficient consideration," but also

recognizing that if one party retains the unilateral right to modify or alter a contract "then any

promise by that party to be bound by the contract is rendered illusory and meaningless, and does

not constitute consideration."); *see also Asberry-Jones v. Wells Fargo Bank, National Association*,

2019 WL 2077731 at *5 (E.D. Pa. May 10, 2019) (holding that there was adequate consideration

because "both parties agreed to be mutually bound by arbitration and [Plaintiff] signed the offer

letter and Arbitration Agreement as a condition of her employment).   There is simply no evidence

to suggest that the Provider Agreement lacks valid formation.

　　Once the party seeking to compel arbitration has demonstrated—as here—that there is a

valid agreement to arbitrate, "there is a strong presumption in favor of arbitrability" and "the trial

---

[6] The Commercial Rules of the American Arbitration Association are cited in the Provider
Agreement because Plaintiff agreed he was an independent contractor and not an employee.

court should order arbitration of any dispute that 'touches matters covered by the parties' contract.'" *Ruhl v. Lee's Summit Honda*, 322 S.W.3d 136, 139 (Mo. 2010). The dispute in this matter—whether Plaintiff was subjected to unlawful discrimination and retaliation on the basis of an alleged disability by Interim—depends largely on whether he was considered an employee of Interim's in the first place. And his employment status with Interim is a central topic of the Provider Agreement which ultimately contains the arbitration provision Interim relies upon here. It is axiomatic, then, that the dispute falls within the scope or terms of the agreement as required under both Missouri and Pennsylvania law.

Finally, there is simply no evidence to suggest that the arbitration provision itself is either procedurally or substantively unconscionable, or that the agreement amounts to a contract of adhesion and should therefore be subject to revocation. "[P]rocedural unconscionability in general is involved with the contract formation process, and focuses on high pressure exerted on the parties, fine print of the contract, misrepresentation, or unequal bargaining position." *Funding Sys. Leasing Corp. v. King Louie Int'l, Inc.*, 597 S.W.2d 624, 634 (Mo. App. W.D. 1979). Substantive unconscionability, on the other hand, is typically evidence by "an undue harshness in the contract terms themselves." *Id.*

As a general matter, adhesion contracts are procedurally unconscionable. A contract of adhesion under Missouri law is often evidenced by a form contract created and imposed by a stronger party on a weaker one. *Swain v. Auto Servs.*, Inc., 128 S.W.3d 103, 107 (Mo. App. E.D. 2003). The Third Circuit Court of Appeals has similarly recognized that an adhesion contract "is one which is prepared by the party with ***excessive*** bargaining power who presents it to the other party for signature on a take-it-or-leave-it basis." *Parilla v. IAP Worldwide Servs., VI, Inc.,* 368 F.3d 269, 276 (3d Cir. 2004) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 265 (3d Cir.

14

2003)) (emphasis added).  Notwithstanding the foregoing, the Third Circuit has nevertheless rejected arguments that arbitration clauses are adhesive merely because there was a disparity in bargaining power. *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1118 (3d Cir. 1993).

Indeed, the presence or absence of meaningful choice is only one factor, and courts will also often consider other factors in addressing unconscionability.  For example, Missouri courts look to see whether such things as "high pressure sales tactics, unreadable fine print, or misrepresentation among other unfair issues in the contract formation process" exist. *Whitney v. Alltel Communications, Inc.*, 173 S.W.3d 300, 308 (Mo. App. W.D. 2005).  Other courts take into account such things as "the age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, [and] the conspicuousness and comprehensibility of the contract language."  *See Sun v. Jackson & Coker Locum Tenens, LLC*, No. 3:10-379-JFA, 2010 WL 1962674 (D. S.C. May 14, 2010).

In addressing some of these factors, Plaintiff's relative education and experience preclude a finding that the clause is procedurally unconscionable.  In *Sun*, *supra*, the plaintiff—as here—was a board-certified physician. *Id.* at *1.  In analyzing the plaintiff's argument in *Sun* (*i.e.*, that the arbitration provision at issue in that case was both procedurally and substantively unconscionable), the District Court noted that the plaintiff was a "highly educated and sophisticated individual," and that the arbitration provision was both "readily intelligible and appear[ed] immediately above [the plaintiff's] signature."  *Id.* at *4.  The District Court therefore held in *Sun* that the arbitration clause was not procedurally unconscionable.

By his own admission here, Plaintiff was an "experienced and qualified applicant" who is a board-certified physician of internal medicine.  Compl. at ¶¶ 1, 27.  For this reason alone, Plaintiff

will not be able to demonstrate that he lacked the education, intelligence, and/or business acumen to appreciate the clear and unmistakable arbitration provision contained in the Provider Agreement.

As it relates to "harshness of the terms," it is first important to note that the Provider Agreement does not seek to limit or control the universe of what disputes or issues can be submitted to arbitration.  The Agreement instead states that "[a]ny dispute or agreement arising out of or relating to this Agreement shall be resolved by binding arbitration . . . ."  **Ex. A**.  There is also no specific clause in the Agreement that the "Provider" alone bear the full cost of arbitration. Even then, the United States Supreme Court has held that the initial burden of proof lies with the plaintiff to show the likelihood of prohibitive costs.  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000). Plaintiff would therefore have to provide evidence of financial hardship above and beyond mere blanket statements that arbitration could prove costly.  *See, e.g.*, *Blair v. Scott Specialty Gases*, 283 F.3d 595, 610 (3d Cir. 2002) (plaintiff provided an affidavit showing her limited financial capacity); *cf Cronin v. Citifinancial Services, Inc.*, No. 08-1523, 2008 WL 2944869 at *5 (E.D. Pa. July 25, 2008) (plaintiff's claim of unconscionability deemed too speculative because his claims were too speculative and he made no showing of financial hardship).

Given that courts must generally find "both procedural and also substantive unconscionability before a contract or a clause can be voided," *Funding Sys. Leasing Corp.*, 597 S.W.2d at 634, and the glaring lack of any evidence of the same here, this Court has no choice but to conclude that there are no grounds to revoke this otherwise valid agreement to arbitrate.

It is for these reasons that should this Court decide not to dismiss Count III of Plaintiff's Complaint, it should nevertheless compel arbitration in accordance with the parties' valid and

enforceable agreement for the same.

**F.      Plaintiff's Claim for Breach of an Oral Contract is Precluded by the Express Language of the Provider Agreement**

To state a claim for breach of contract under Pennsylvania law,[7] a claimant must allege: (1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) damages from the breach. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)) (internal punctuation omitted).  Generally, a separate oral agreement can only exist if it concerns a subject matter different than the written agreement. *Iron Worker's Sav. & Loan Ass'n v. IWS, Inc.*, 424 Pa. Super. 255, 622 A.2d 367, 373–74 (Pa. Super. Ct. 1993); *see also Cohn v. McGurk*, 330 Pa. Super. 333, 479 A.2d 578, 582–83 (Pa. Super. Ct. 1984) (concluding that an alleged oral contract entered into prior to the execution of the written mortgage was an entirely separate agreement and admitting evidence regarding the oral contract).

With regard to what evidence courts may consider in analyzing a contract, the parol evidence rule bars evidence of prior representations in a fully integrated contract. *See Rahemtulla v. Hassam*, 539 F.Supp.2d 755, 772 (M.D. Pa. 2008) (citations omitted). In other words, "[w]here a written contract contains an integration clause, 'the law declares the writing to not only be the best, but the only evidence of the parties' agreement.'" *Id.* at 772–73 (quoting *Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 854 A.2d 425, 436 (2004)).  Integration clauses thus serve to give effect to the parol evidence rule: "the written contract, if unambiguous, must be held to express all of the negotiations, conversations, and agreements made prior to its execution, and

---

[7] Unlike Plaintiff's claim for breach of the written Provider Agreement at Count III of his Complaint, Plaintiff's breach of an alleged oral contract at Count IV is not governed by any choice-of-law provision and therefore Missouri law does not apply.

neither oral testimony, nor prior written agreements, or other writings, are admissible to explain or vary the terms of the contract." *Id.* at 773 (quoting *Hart v. Arnold*, 884 A.2d 316, 341 (Pa. Super. Ct. 2005)).

While Plaintiff did not attach a copy of the Provider Agreement to his Complaint in support of his breach of contract claims, he nevertheless acknowledged "the parties agreed to the [Agreement's] terms." Compl. at ¶ 37. Even a cursory review of the parties' Provider Agreement reveals a valid and enforceable integration clause, which states in pertinent part that the Agreement "(1) constitutes the entire agreement of the parties with respect to the subject matter hereof" and that the Agreement "(2) may not be amended, altered or revised, except by instrument in writing, signed by both parties." **Ex. A**, ¶ 7(e). The Provider Agreement is unambiguous in its terms, and the parties have not signed an amended, altered, or revised version of the same. Given the fact that Plaintiff's breach of oral contract claim is merely an alternate argument of his breach of written contract claim—indeed, the allegations of Count IV mirror those in Count III in every respect and do not "concern a subject matter different than" the April 4, 2019 Provider Agreement—Plaintiff's claim at Count IV is barred by the parol evidence rule.

For these reasons, Plaintiff has failed to state a claim upon which relief can be granted as to Count IV (Breach of Oral Contract) of his Complaint, and said claim must be dismissed.

## IV.   <u>CONCLUSION</u>

On its face, Plaintiff's Complaint is deficient in multiple respects. Plaintiff cannot establish an employment relationship with Interim to warrant protection under either the ADA or the PHRA in Counts I and II of Plaintiff's Complaint. Moreover, Plaintiff entered into an agreement with Interim to arbitrate Plaintiff's breach of contract claim in Count III of Plaintiff's Complaint and whether analyzed under Missouri or Pennsylvania law, it is clear there is a valid and enforceable

agreement to arbitrate.  Lastly, Plaintiff cannot maintain a claim for breach of an oral contract when the express language of the Provider Agreement is clear and unambiguous.

For these reasons, the Court should dismiss all counts as it relates to Interim and order that Plaintiff be compelled to arbitrate any remaining claims.

Respectfully submitted,

GORDON REES SCULLY
MANSUKHANI, LLP

/s/ Alexander Nemiroff
Alexander Nemiroff (PA ID. #92250)
Three Logan Square
1717 Arch Street, Suite 610
Philadelphia, PA 19103
(267) 602-2040 (phone)
(215) 253-5017 (fax)

Attorneys for Defendant Interim
Physicians, LLC

Dated:  July 20, 2023

19

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 20th day of July 2023, Defendant Interim Physicians, LLC's Motion to Dismiss Plaintiff's Complaint or, in the alternative, Compel Arbitration, supporting Brief and proposed Order were electronically filed and are available for viewing and downloading from the ECF system.  Plaintiff's counsel has consented to service through the ECF system.


/s/ Alexander Nemiroff
Alexander Nemiroff

## <u>CERTIFICATE OF NONCONCURRENCE</u>

I, Alexander Nemiroff, hereby certify that I sought the concurrence of Plaintiff's counsel

regarding this Motion.  Plaintiff's counsel did not concur in this Motion.

<u>s/ Alexander Nemiroff</u>
Alexander Nemiroff

Dated: July 20, 2023

# EXHIBIT A

DocuSign Envelope ID: B575EF5E-628F-482F-9876-06047CB1F7A3



PHYSICIANS
*Staffing Quality Care*

www.interimphysicians.com

(800) 226-6347

Locum Tenens Provider Agreement
This is an Agreement between Interim Physicians, LLC, a Delaware limited liability corporation, d/b/a Interim
Physicians ("Interim" or "Broker"), with its principal place of business at 12647 Olive Boulevard, Suite 100, St. Louis,
MO 63141, and the Provider described below ("Provider"), to provide locum tenens medical services at the
assignment address and for the rates and periods described in Addendums and Exhibits provided for herein, subject
to the terms of this agreement.

## 1. PROVIDER INFORMATION

| Contractor Name: | Alexander Weller |
| --- | --- |
| Address: | 1244 Dickinson Drive |
| City, State, ZIP: | Yardley PA 19067 USA |
| Phone Number: | 2675662440 |

## 2. RATE INFORMATION

Broker's payment to Provider will be shown as a separate Exhibit A for each assignment accepted and will become a
part of this Agreement. For each assignment agreed upon between Broker, a client of Broker ("Client") and Provider,
an Exhibit A will be generated by Broker and delivered to Provider. A facsimile or email transmission of either a
manually or electronically signed Provider Agreement or Exhibit A shall be sufficient for all purposes. The Exhibit A
shall identify the Client's location of the assignment that requires the services of Provider, the Provider's
corresponding payment and the corresponding dates of the assignment. The payment provisions of Exhibit A shall be
binding. The provisions of this Agreement will apply to each Exhibit A except in case of conflict between terms, in
which event the Exhibit A shall control as to the particular assignment involved.

## 3. BROKER RESPONSIBILITIES

Broker agrees:

    a. To use its best efforts to provide acceptable locum tenens assignment(s).
    b. For each Assignment, Interim Physicians will provide medical malpractice coverage to Doctor through its
        insurance company in limits of $1,000,000 per incident and $3,000,000 in the aggregate or such higher
        limits as state law may require. Professional Liability Insurance covers both Interim Physicians and Doctor
        for claims of medical malpractice that may occur as a result of Doctor's provision of Services. Professional
        Liability Insurance shall apply for each Assignment regardless of when a claim is made. If the insurance is
        on a claims made basis, Interim Physicians shall be responsible for arranging and maintaining adequate
        "tail" coverage to cover all claims which may be brought in connection with Services rendered by Doctor to
        Client(s), regardless of when the claim is made. Coverage hereunder is subject to the terms of the policy of
        Professional Liability Insurance
    c. To coordinate between Provider and Client the round-trip transportation, lodging and local transportation
        necessary for the placement of Provider hereunder.
    d. To pay all compensation due to Advanced Wellness Services, LLC.

## 4. PROVIDER RESPONSIBILITIES

Provider agrees:

    a. Contractor shall faithfully and diligently render Services pursuant to the highest professional and ethical
        standards and in accordance with accepted standards of care. Contractor shall furnish Services in
        accordance with all applicable state and federal laws, Client policies, procedures, by-laws and standards,
        including Joint Commission standards if applicable, for the medical profession and Contractor's specialty.
        Contractor shall exercise independent judgment and control over the provision of Services. Contractor shall
        maintain appropriate patient records, which shall remain the property of the Client. Contractor shall complete
        all dictation, progress notes, histories, physicals, chart documentation and other necessary documentation
        relating to clinical care prior to the completion of each Assignment
    b. Contractor will cooperate with Interim Physicians in completing, verifying and providing accurate and
        complete credentialing and licensing information.

INITIALS_____

DocuSign Envelope ID: B575EF5E-628F-482F-9876-06047CB1F7A3



PHYSICIANS
*Staffing Quality Care*

*www.interimphysicians.com*

(800) 226-6347

c.  Except as provided in paragraph 3(c) of this Agreement, or as otherwise agreed to in writing by Broker or Client and signed by an authorized representative, to pay for all of Provider's additional expenses, including, but not limited to, upgrades on all airline, lodging, and ground transportation, food, and personal telephone and entertainment costs.

d.  On Monday of each week during the term of this Agreement, to email or fax to Broker a weekly Provider Statement of Work Performed ("Work Log") along with a copy of receipts in support of approved expenses for the week, signed by an authorized representative of Client. Provider acknowledges and agrees that Broker shall not be obligated to make any payment to Provider for any period for which Broker has not received both an approved Work Log, signed by an authorized representative of Client, and copies of receipts for valid expenses. **Provider acknowledges and agrees that neither Client nor Broker are obligated to pay for any Work Logs or approved Expenses submitted for payment thirty (30) days beyond the date last worked at any assignment.**

e.  To indemnify, defend and hold harmless Broker, its respective officers, employees, agents and affiliates, from and against any and all liability, loss, cost and expense (including, without limitation, reasonable attorney's fees) arising out of or in connection with Provider's negligent acts or omissions that are not covered by Broker's medical malpractice liability insurance.

f.  All payment for Provider's services hereunder (except the fees payable to Provider by Broker pursuant to any subsequent Exhibit A) shall be the property of Client. Should Provider receive payments as a consequence of Provider's services to client hereunder, Provider hereby irrevocably authorizes Client to endorse and deposit checks and other instruments made payable to Provider for such services. Provider further agrees to deliver written evidence of assignment of fees and the authority herein granted to such Medicare or Medicaid carrier, government agency or entity, bank or other party as maybe designated by Client or by any facility of Client at which medical services are performed by Provider hereunder.

g.  That the terms of this Agreement, and Provider's engagement hereunder, are confidential, and, except as required by law, Provider shall not, directly or indirectly, without the prior written consent of Broker, disclose the terms of this Agreement or Provider's assignment hereunder, to any third party, except to entities necessary for the normal business operation of the provider, including attorneys and accountants

h.  To provide Client, via Broker's representative, with no less than 30 days' notice before canceling any arranged, scheduled or ongoing locum tenens assignment, whether verbal or written. In the event such notice is not forthcoming, Provider agrees to pay any cost incurred by Broker or its Client pertaining to credentialing, transportation, lodging, mailing and facsimile but only those expenditures that result from Provider's promise, verbal or written, to perform such scheduled shifts. Provider shall have no obligation to pay in the event of the provider's death, disability or inability to work due to serious medical illness, given written proof from provider.

## 5. NON-COMPETITION PROVISION

During the term of this Agreement and for a period of two (2) years after the formal termination of this Agreement, provider agrees not to accept an offer of employment from either another agency or the Client directly to work on a contract basis or as an employee (either part time, full time, or as an Independent Contractor) at a Client facility where the Provider performed medical services under the terms of this Agreement; or to which Provider's Curriculum Vitae (CV) was presented due to the efforts of Interim, without the expressed written consent of Interim.

## 6. TERMS OF AGREEMENT

This Agreement shall take effect upon the execution hereof and shall continue until the earlier of:

a.  The refusal of Broker's medical malpractice insurer to provide coverage to Provider or the cancellation of Provider's insurance coverage by such carrier.

b.  The material misrepresentation or willful omission from any curriculum vitae or credentialing documents provided by Provider to Broker, or

c.  The loss by Provider of any license, certification or privilege required for the delivery by Provider of medical services hereunder.

## 7. GENERAL

Provider and Broker agree:

a.  Any notice provided for in this Agreement shall be in writing and shall be sent to the President of Interim or to Provider at the addresses shown on the attachment to this Agreement or to such other address as either party may from time to time specify by notice to the other party.

INITIALS_____

DocuSign Envelope ID: B575EF5E-628F-482F-9876-06047CB1F7A3



**PHYSICIANS**
*Staffing Quality Care*

*www.interimphysicians.com*

**(800) 226-6347**

   b.  Provider shall immediately notify Client and Interim in writing of any threatened or actual malpractice claims involving Provider, whether the situation giving rise to such claims took place before or during this Agreement or related to professional services in connection with this Agreement; Provider also agrees to notify Interim immediately via a written Incident Report relating to services provided under this Agreement that Provider has any reason to believe may lead to a malpractice claim, including any notification of such possible action from any healthcare facility. Provider understands and accepts that failure to comply with the terms of this paragraph may invalidate the malpractice liability insurance provided under this Agreement.

   c.  Anything in the Agreement to the contrary notwithstanding, Interim shall not have or exercise any control of any kind or nature over the manner or means by which Provider performs medical services or makes medical judgments or determinations, nor shall any provision of this Agreement be deemed or construed to mean that Interim, or any employee of Interim, is engaged in the practice of medicine.

   d.  Any dispute or disagreement arising out of or relating to this Agreement shall be resolved by binding arbitration conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The award of the arbitrator(s) may be entered and enforced in any court of competent jurisdiction.

   e.  This Agreement: (1) constitutes the entire agreement of the parties with respect to the subject matter hereof; (2) may not be amended, altered or revised, except by instrument in writing, signed by both parties; (3) shall be binding upon the parties, their heirs, personal representatives, successors and assigns; (4) is severable, and if any provision shall be deemed to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other provision of this Agreement; (5) shall be deemed to be a contract made and entered into under the laws of the State of Missouri and the laws of such State shall govern the interpretation and enforcement hereof.

   f.  The provisions of Section 4 (g) and (h) shall survive the termination or expiration of this Agreement.

**8. INDEPENDENT CONTRACTOR STATUS**                       **INITIALS_____**

**Provider and Broker agree that Provider, Client and Interim are independent entities. Without limiting the generality of the foregoing, Provider specifically acknowledges and agrees that Provider is not an employee of Interim. Provider shall be responsible for the payment of all income, Social Security, Medicare, self-employment and other taxes, federal, state and local, due upon the amount paid to Provider pursuant to this Agreement, and that no such taxes shall be paid or withheld by Interim. Interim may request that Provider show proof that all appropriate tax forms have been filed or paid with the appropriate taxing authorities. Provider agrees to procure, keep and maintain state statutory limits for workers compensation and unemployment insurance to the extent applicable for Independent Contractors. Provider warrants and agrees that Provider is not eligible for such benefits from Broker or Client.**

**Provider also acknowledges and agrees that, in accordance with the generally accepted definition of an Independent Contractor, assignments may be terminated at will by Client, with cause or without cause at the Client's discretion, and that this Agreement will constitute the only agreement between the parties.**

**Provider further acknowledges that, as a consequence of this Agreement, and the services provided by Provider hereunder or upon the termination of this Agreement, he/she is not entitled to any benefits from Interim of any kind, including but not limited to: vacation pay, unemployment benefits or worker's compensation benefits.**

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date shown opposite their respective signatures.

**THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION THAT MAY BE ENFORCED BY THE PARTIES.**

**Provider:**                                                    **Interim Physicians**

By: Alex Weller           *— DocuSigned by:*          By:_____

                         D1CF299099SA4D0...

Date:___4/4/2019 | 8:53 AM CDT___       Date:_____

Please fax to Interim Physicians at (800) 859-3163

**INITIALS_____**